# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

_____

ROBERT A. WASHNIESKI,

       Plaintiff,

  v.                                  Case No. 07-CV-598

MICHAEL J. ASTRUE,
Commissioner of Social Security,

       Defendant.

_____

## ORDER

The plaintiff, Robert Washnieski ("Washnieski"), filed this action for judicial review of the final decision of the Commissioner of Social Security denying his application for disability insurance benefits, pursuant to 42 U.S.C. § 405(g). Washnieski alleges disability beginning in April 2003 arising from a left shoulder injury, as well as neck, back, and knee pain. Washnieski's application for disability insurance benefits was denied by an Administrative Law Judge ("ALJ") on October 4, 2006. The Social Security Appeals Council subsequently denied review, leading Washnieski to file for review in this court on June 29, 2007. Washnieski argues that the ALJ decision is not based on substantial evidence and should be remanded. For the reasons set forth below, the court finds that portions of the ALJ's decision are not supported by substantial evidence and remands in part.

## BACKGROUND

Washnieski initially filed for Disability Insurance Benefits in March 2004. (Tr. 53-55). His application was denied in April 2004 and upon reconsideration in July, 2004. (Tr. 24-26). Washnieski then appeared with counsel before an ALJ in September 2005. (Tr. 265-92). At that time, the ALJ found that Washnieski was not disabled under the Act. (Tr. 199-207). Washnieski appealed and the Social Security Appeals Council vacated the decision and remanded the case for a new hearing in April 2006. Washnieski then received a second hearing before a different ALJ in October 2006 to resolve the extent to which his exertional and nonexertional limitations eroded the occupational base for light work. Washnieski again appeared with counsel and a vocational expert testified at the hearing. (Tr. 293-325). In November 2006 the ALJ issued a decision finding that Washnieski was not disabled because he could perform a significant number of jobs in the national economy. (Tr. 13-23). The Appeals Council denied review of the decision and Washnieski filed suit in this court on June 29, 2007. (Tr. 7-9).

Washnieski was 45 years old at the time of his most recent hearing in October, 2006. (Tr. 23, 53). He completed the 12th grade and worked as a machinist in a factory for over 15 years, from 1987 until he was involved in a car accident in August 2002. (Tr. 62-67). Following his accident, Washnieski missed a month and a half to two months of work. Washnieski then returned to his job, where he was placed on "light duty," and worked under restrictions including no lifting, reaching, bending or twisting. In April 2003, Washnieski's employer terminated him.

Shortly thereafter, Washnieski underwent arthroscopic, day-surgery on his left shoulder. (Tr. 298-99). In October 2003, Washnieski's doctor gave him a specific work restriction, writing: "If he were to return to a job position, I would recommend activities below shoulder height." (Tr. 157). Three months later, Washnieski's doctor reported that his condition had "plateaued" and that a 10 percent permanent partial disability rating was warranted at the left shoulder level. (Tr. 155). In addition, Washnieski received permanent restrictions on his general activities, including no squatting, crawling, reaching overhead, climbing on a ladder, or lifting of more than 50 pounds. (Tr. 300). Following his termination, Washnieski applied for work at "many locations" but has been unable to obtain a job. (Tr. 300).

Washnieski testified that since his 2003 surgery, he has experienced left shoulder, neck and lower back pain, as well as numbness of the left arm and hand. (Tr. 301). Washnieski further testified that he has limited use of his left arm, which has little grip strength and cannot reach overhead or "swing around." (Tr. 301, 303-04). He now uses his right, non-dominant arm for many activities. However, even when lifting items such as a gallon of milk in his right arm, he feels the strain on the left side of his body. (Tr. 316). In the six months prior to his hearing, Washnieski began experiencing left knee problems and now wears a brace everyday. (Tr. 301-02, 315). He reports a history of Schlatter's disease on his left knee, but an MRI is on hold due to a lack of finances. (Tr. 302). Washnieski also claims that standing for more than ten minutes or sitting for more than twenty causes pain in his left arm. In addition, Washnieski testified that he uses a cane for walking more than 300 feet,

his leg and back problems cause him to fall occasionally due to pain, and that he is only able to drive short distances. (Tr. 302-03, 311). Washnieski claims that his various physical issues also limit other daily activities, including preventing him from performing yard work or household tasks other than heating food in the microwave, limiting his ability to reach for personal hygiene purposes, shortening showers due to concern about slippery surfaces, and leading him to wear "simplified clothing" such as slip-on shoes and zippered shirts. (Tr. 307-08, 314). Finally, Washnieski testified that pain and numbness cause interrupted sleep and his medication causes drowsiness. (Tr. 317).

## ANALYSIS

When reviewing a Social Security benefits determination, the court must uphold the agency's findings if they are supported by substantial evidence and were reached using correct legal standards. *Edwards v. Sullivan*, 985 F.2d 334, 336 (7th Cir. 1993); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Substantial evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not re-evaluate the facts, re-weigh the evidence, or substitute its own judgment for that of the agency. *Edwards*, 985 F.2d at 336. Though the standard of review is generous, where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). The court need not do a written evaluation of every piece of evidence, but the ALJ must articulate his or her

assessment of the evidence so that the court may trace the ALJ's reasoning. *See Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996).

To qualify for disability benefits under the Social Security Act, the claimant must be unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005) (quoting 42 U.S.C. § 423(d)(1)(A)). The Social Security regulations create a five-step, sequential test for determining whether a claimant is disabled. *Id.* Under this test, the administrative law judge must address the following questions: 1) Is the claimant presently employed? 2) Is the claimant's impairment severe? 3) Do the impairments meet or exceed any of the specific impairments the Secretary acknowledges to be conclusively disabling? 4) Have the claimant's impairments limited his or her remaining or residual functional capacity so that he or she is no longer able to perform the demands and duties of a former occupation? 5) Is the claimant unable to perform any other work in the national economy given his or her age, education and work experience? *Wolfe v. Shalala*, 997 F.2d 321, 322-23 (7th Cir. 1993). If the ALJ reaches a negative conclusion at any step, other than at step three, this conclusion precludes a finding of disability. *Id.* at 323.

After Washnieski's October 2006 hearing, the ALJ determined that he was not disabled at step five of the sequential test. The ALJ concluded that Washnieski was able to perform "light work" and "sedentary work" and that given his age, education,

work experience, and residual functional capacity, other jobs existed in significant numbers in the national economy that he was able to perform.

Washnieski disputes the ALJ's decision and argues that it is not based on substantial evidence. As part of this argument, Washnieski makes four specific assertions. First, he argues that the ALJ made an improper credibility determination regarding his testimony about symptoms, in violation of SSR 96-7p. Second, he argues that the ALJ impermissibly "played doctor" by making an independent medical finding. Third, he argues that the ALJ erred by weighing outdated medical evidence and by failing to conduct a required function-by-function assessment of his capabilities. Finally, Washnieski argues that the ALJ made an improper determination at step five of the sequential test.

**A.    Credibility Determination Under SSR 96-7p**

Washnieski asserts that the ALJ improperly assessed the credibility of his testimony regarding symptoms, in violation of Social Security Ruling 96-7p ("SSR 96-7p"). Washnieski claims that because the ALJ found his medically determinable impairments could reasonably produce his alleged symptoms, the ALJ incorrectly relied on the lack of objective medical evidence to discredit his testimony, contrary to the language of SSR 96-7p. In addition, Washnieski points to SSR 96-7p language stating that the consistency of a claimant's statements is a strong indication of credibility. Washnieski further argues that the ALJ wrongly relied on the "large gaps" in his treatment history to question his credibility without acknowledging his proffered reason for the lapse; lack of medical insurance. Washnieski also

challenges the ALJ's disbelief that he was unable to perform house or yard work since 2004 and claims that the record supports this contention. Finally, Washnieski asserts that the ALJ erred in failing to consider the side effects of his medications.

An ALJ's credibility determination is entitled to special deference and will not be disturbed unless it is patently wrong. *Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004); *Diaz v Chater*, 55 F.3d 300, 308 (7th Cir. 1995). Review of credibility determinations made by administrative law judges of the Social Security Administration is highly limited because the court "lacks direct access to the witnesses, lacks the trier's immersion in the case as a whole, and when reviewing decisions by specialized tribunals also lacks the trier's experience with the type of case under review." *Carradine v. Barnhart*, 360 F.3d 751, 753 (7th Cir. 2004). However, these credibility determinations are not completely immune from review, particularly when the determination is based on objective factors instead of subjective considerations. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 354 (7th Cir. 2005).

When an ALJ evaluates the credibility of testimony and complaints, there are several factors to consider, including the absence of an objective medical basis supporting the degree of severity of subjective complaints alleged, the claimant's daily activity, the duration, frequency, and intensity of pain, the precipitating and aggravating factors, dosage, effectiveness, and side effects of medication, and functional restrictions. *Scheck*, 357 F.3d at 703; *see also* SSR 96-7p. After evaluation of these factors, an ALJ may find a claimant's symptoms not credible

even where there is a medically determinable impairment that could reasonably be expected to produce the symptoms the complainant alleges. *Metzger v. Astrue*, 263 Fed. Appx. 529, 533 (7th Cir. 2008) (citing *Scheck v. Barnhart*, 357 F.3d 697, 701-03 (7th Cir. 2004)).

SSR 96-7p requires an ALJ to first ascertain whether there is a medically determinable impairment that could reasonably be expected to produce the symptoms the complainant alleges. Next, the ALJ must evaluate the intensity, persistence, and functionally limiting effects of the claimant's symptoms to determine the effect on his ability to work. SSR 96-7p. In determining credibility of the claimant, the ALJ must "carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record." *Id.* The ALJ cannot disregard the claimant's statements about his symptoms "solely because they are not substantiated by objective medical evidence." *Id.*

The ALJ in the instant case considered the relevant factors before deeming Washnieski's testimony about his symptoms "not entirely credible." (Tr. 21). Viewing the evidence and testimony in Washnieski's case, it is possible for other judges to come to a different conclusion than the ALJ regarding Washnieski's credibility. However, this does not mean that the ALJ's credibility determination is "patently wrong." Therefore, this court gives the ALJ's credibility determination the required special deference and declines to find it unsupported by substantial evidence.

The ALJ examined the relevant evidence in the case record in order to come to his credibility determination. He articulated Washnieski's specific physical

-8-

Case 2:07-cv-00598-JPS   Filed 08/22/08   Page 8 of 18   Document 17

complaints that have little or no supporting medical evidence, such as the lack of documentation regarding Washnieski's inability to use his left arm and hand and the lack of treatment notes documenting that his back and knee pain prevent him from standing or require him to alternate positions. (Tr. 21). The ALJ also evaluated the intensity and persistence of Washnieski's symptoms by pointing to the "large gaps" in his medical treatment and the mild forms of medication and medical intervention prescribed. (Tr. 21). Though Washnieski alleges error by the ALJ in not properly considering the side effects of his medications, there is no medical documentation of any side effects or complaints and Washnieski testified only that his medication made him "drowsy." (Tr. 317-18). In addition, the ALJ found that Washnieski's asserted inability to perform household chores after September 2004 did not square with the lack of medical documentation and the fact that Washnieski's physician "noted on examination that he did not have any pain in his left upper extremity." (Tr. 21).

Given the ALJ's consideration of these factors, the court cannot find that the credibility determination was "patently wrong." The ALJ's finding that Washnieski's self-reported symptoms and limitations were "not entirely credible," in combination with the lack of medical documentation corroborating those increased limitations, provides substantial evidence for the ALJ's decision. *See Rasmussen v. Astrue*, 254 Fed. Appx. 542 (7th Cir. 2007) (holding that an ALJ's credibility determination, together with the absence of medical records corroborating the applicant's self-

reported pain, supported the conclusion that she could work and the ALJ's decision was supported by substantial evidence).

**B.    "Playing Doctor"**

Washnieski argues that the ALJ erred by conjecturing about the cause of his injuries when the ALJ wrote that the chronology of Washnieski's treatment "almost makes it appear as though he possibly suffered a new injury in the period following his initial surgery, given that the more recent findings differ markedly from those observed earlier by Dr. Wells." (Tr. 21). Administrative Law Judges are not permitted to "play doctor" by substituting their own judgment for that of medical professionals. *Goodson v. Barnhart*, 217 F. Supp. 2d 892, 900 (N.D.Ill. 2002) (citing *Rohan v. Chater*, 98 F.ed 966, 970 (7th Cir. 1996)). In particular, ALJs may not make independent medical findings. *Id.*

Contrary to Washnieski's assertions, the ALJ did not commit error by making the aforementioned statement. The ALJ did not supplant any physician's medical opinion with his own finding, nor did he make a medical judgment regarding the cause of Washnieski's most recent symptoms. Instead, he highlighted the difference in medical findings between two physician reports and hypothesized an explanation. This court does not find that the ALJ "impermissibly played doctor" when he referenced disparities between two medical reports that "almost make it appear" as though Washnieski "possibly" suffered a separate injury. This statement in itself does not undermine the ALJ's ultimate findings.

## C. Weighing of Outdated Medical Evidence and Failure to Conduct a Function-by-Function Assessment

Washnieski asserts that because the ALJ found him not credible, the ALJ then erred in weighing an outdated medical report that resulted in an inaccurate Residual Functional Capacity ("RFC"). Washnieski further argues that the ALJ erred by failing to conduct a function-by-function analysis of Washnieski's capabilities, and should have ordered a consultative examination pursuant to 20 C.F.R. § 1519(a). The court finds no error in the ALJ's use of an older medical report when determining the RFC. However, the court does find error in the ALJ's failure to conduct the function-by-function assessment required by SSR 96-8p.

An RFC is an assessment based on all of the relevant evidence of what a claimant is still capable of, despite limitations. *Converse v. Apfel*, 144 F. Supp. 2d 1045, 1049 (N.D.Ind. 2000) (citing 20 C.F.R. § 404.1545(a)). The ALJ determines the claimant's RFC by considering medical reports, as well as observations and descriptions of the claimant's limitations. *Id*. However, the determination of the RFC is reserved to the Social Security Administration. *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995) (citing 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2)). The ALJ in the instant case found that the restrictions imposed by Washnieski's doctor in October 2003 were still appropriate restrictions given the "nature of the objective findings presented." (Tr. 22). The ALJ does rely on physician restrictions written three years prior. However, as he points out, "no medical professionals including Dr. Owens have provided the claimant with additional restrictions to those originally provided." (Tr. 22). Washnieski can point to no medical opinion stating that he

-11-

Case 2:07-cv-00598-JPS    Filed 08/22/08    Page 11 of 18    Document 17

needs a more restrictive work assessment, even from his most recent physician visits in 2006. In addition, the ALJ is solely responsible for determining the claimant's RFC at the administrative level. 20 C.F.R. § 404.1546(c). Therefore, the court does not find that the ALJ improperly relied on the only physician work restrictions available in determining Washnieski's RFC.

However, the court does find that the ALJ erred by failing to conduct a function-by-function assessment of Washnieski's abilities. Under SSR 96-8p, the ALJ must find the claimant's functional limitations on a function-by-function basis *before* determining the RFC. (emphasis added) SSR 96-8p. These functions include a claimant's ability to sit, stand, walk, lift, carry, push, and pull. *Id.* The ALJ in the instant case failed to provide assessment for any function other than Washnieski's ability to lift. Instead, the ALJ merely summarizes his reasons for deeming Washnieski not credible and asserts that "there is no basis for finding [Washnieski] suffered debilitating pain or other symptoms that would further reduce the residual functional capacity." (Tr. 22). The ALJ's function-by-function assessment consists of only one phrase: "no left arm overhead lifting." (Tr. 22). This cursory assessment of Washnieski's abilities does not meet the requirements of SSR 96-8p. Instead, SSR 96-8p requires that the RFC assessment include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and non-medical evidence. *Lechner v. Barnhart*, 321 F. Supp. 2d 1015, 1036 (E.D.Wis. 2004). The court will remand for an adequate function-by-function assessment of Washnieski's abilities.

-12-
Case 2:07-cv-00598-JPS    Filed 08/22/08    Page 12 of 18    Document 17

**D. Step Five Determination**

Washnieski also argues that the ALJ made an improper determination at Step Five of the sequential test by finding that Washnieski was able to perform other work in the national economy given his age, education, and work experience. Specifically, Washnieski asserts that the vocational expert did not identify transferable skills. He further alleges that the ALJ failed to incorporate all of Washnieski's impairments into the hypotheticals presented to the vocational expert at his October 2006 hearing. Finally, Washnieski argues that the ALJ failed to comply with SSR 00-4p because he failed to ask the vocational expert if his testimony was consistent with the job descriptions in the Dictionary of Occupational Titles ("DOT"). The court finds no error in the ALJ's failure to identify transferable skills or his presentation of impairments in the hypotheticals. However, the court finds that the ALJ did err in failing to inquire about the consistency between the vocational expert's testimony and the DOT, as required by SSR 00-4p.

Wahnieski asserts that the ALJ erred by failing to identify skills from his past work that are transferable to specific jobs Washnieski may still perform. Transferability is the application of work skills demonstrated in vocationally relevant past jobs to meet the requirements of other skilled or semi-skilled jobs. *Key v. Sullivan*, 925 F.2d 1056, 1062 (7th Cir. 1991). When transferability of skills is at issue, the ALJ is required to identify the acquired work skills, and specific occupations to which the acquired work skills are transferable must be cited in the ALJ's recommended decision. *Id.* Washnieski's past relevant work as a machinist

is a skilled job. (Tr. 321). However, the transferability of skills from Washnieski's previous skilled work was not at issue. The vocational expert verified that Washnieski was no longer able to do his past relevant work as a machinist. In addition, the vocational expert testified that any position a person with Washnieski's limitations could hold would be "light work" and not the "heavy level work" he had previously done. (Tr. 321). As a result, any failure to identify transferable skills does not create a lack of substantial evidence.

Washnieski next argues that the ALJ erred by failing to incorporate all of his impairments into the hypotheticals the ALJ presented to the vocational expert. Washnieski points to the ALJ's failure to include his walking limitations, his need to alternate sitting and standing, and his side effects from medication. The hypotheticals presented by the ALJ asked the vocational expert whether there were jobs of the following types available:

I.  Jobs for a person of the same age, education, and work experience as the claimant who is limited to light work, that do not require the use of his dominant extremity above shoulder height. (Tr. 321).

II. Jobs for a person of the same age, education, and work experience as the claimant who is limited to sedentary work and needs to alternate position between sitting and standing in 30-minute increments, that do not require use of his dominant extremity above shoulder level. (Tr. 321-22).

III. Jobs for a person of the same age, education, and work experience as the claimant who is limited to light work and can stand for six hours of an eight-hour day, that do not require any functional use of his dominant extremity for any reason due to numbness and lack of feeling. (Tr. 322).

When presented with each of the ALJ's hypotheticals, the vocational expert responded that jobs existed in the state which a person with the presented restrictions could perform. (Tr. 321-23). The vocational expert testified that there are a substantial number of jobs available in the state of Wisconsin which could be performed by each hypothetical claimant[1].

When an ALJ poses a hypothetical question to a vocational expert, the question must include "all limitations supported by medical evidence in the record." *Steele v. Barnhart,* 290 F.3d 936, 942 (7th Cir. 2002). This ensures that the vocational expert does not include jobs the claimant cannot work "because the expert did not know the full range of the applicant's limitations." *Id.* However, in the instant case, the vocational expert was aware of Washnieski's medical limitations. As previously discussed, the only medically-documented restriction available to the ALJ was the limitation on left overhead reaching. The ALJ clearly accounts for this limitation in his hypotheticals when he incorporates the following conditions on his job scenarios: "not requiring use of his dominant extremity above shoulder height,"

---

[1]The vocational expert provided the following jobs and approximate number of positions available in the state as examples of work in the economy that the hypothetical claimant could perform:

1. Hotel clerk (6,000 jobs); Counter Rental Clerk (2,000 jobs); Cashier/Checker (19,000 jobs); and Security Guard (7,500 jobs).

2. Bench Work Assembly (2,400 jobs); Production Inspectors (375 jobs); Sedentary Machine Feeders (550 jobs); Sedentary Hand Packagers (410 jobs); Sedentary Cashiers (600 jobs); and Sedentary Security Guard/Monitors (50 jobs).

3. Hotel Clerk (6,000 jobs); and Counter Clerk (2,000 jobs).

(Tr. 321-23).

"no use of dominant extremity above shoulder level," and "not only could not use his dominant extremity above shoulder level, but essentially could not use his left upper dominant extremity for any reason." (Tr. 321-22). The ALJ did not err when he failed to incorporate symptoms into his hypotheticals that were not reflected by medical evidence or failed to incorporate symptoms he found "not entirely credible." Therefore, the hypotheticals presented to the vocational expert do not create a lack of substantial evidence.

Though the court finds no error arising from the hypotheticals, the court does find the ALJ erred by not complying with SSR 00-4p's requirements. Washnieski correctly asserts that the ALJ erred by failing to ask the vocational expert whether his testimony was consistent with the DOT and to explain any conflicts. Social Security Ruling 00-4p requires the ALJ to first ask the vocational expert whether his testimony conflicts with the DOT, and then elicit a reasonable explanation for any such discrepancy. *Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006). The ALJ has an affirmative duty to make this inquiry before relying on the expert's evidence to support a disability determination or decision. *Id.* Washnieski correctly points out that the ALJ failed to ask the vocational expert whether the identified jobs were consistent with the DOT. An ALJ's failure to make this inquiry, particularly when the vocational expert's testimony presents a conflict with the DOT, leads to remand of the case. *See Id.* at 736; *Earl v. Astrue*, 2008 WL 2078618, at *13 (N.D.Ind. May 14, 2008); *Spencer v. Astrue*, 2008 WL 1836669, at *10 (N.D.Ind. Apr.

22, 2008); *Baxter v. Astrue*, 2008 WL 222291, at *3 (S.D.Ind. Jan. 25, 2008); *Keener v. Astrue*, 2008 WL 687132, at *16 (S.D.Ill. Mar.10, 2008).

There is no dispute that the ALJ in the instant case failed to ask the vocational expert whether his testimony was consistent with the DOT. (*See* Tr. 320-24). In addition, Washnieski points to the inconsistency between the RFC finding that Washnieski can only perform light work with "no left arm overhead lifting," and the DOT requirements for overhead reaching of both hands and good bilateral manipulation in order to perform the jobs identified by the vocational expert. The need to explain such conflicts is the purpose behind SSR 00-4p's requirement for inquiry. The ALJ failed to ask the vocation expert whether his testimony complied with the DOT, in violation of SSR 00-4p. Therefore, the court cannot find that there is substantial evidence supporting the outcome of the hearing.

Pursuant to the above discussion, the court remands the case in part so that the ALJ may conduct an appropriate function-by-function assessment before determining the RFC pursuant to SSR 96-8p, as well as perform the necessary inquiry of the vocational expert pursuant to SSR 00-4p. The court finds no error by the ALJ in the remaining issues raised by Washnieski. The balance of the agency's decision is supported by substantial evidence.

Accordingly,

**IT IS ORDERED** that the ALJ's decision be and the same is hereby **AFFIRMED** in part and **VACATED** and **REMANDED** in part.

The Clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 22nd day of August, 2008.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge